NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1137

COMMONWEALTH

vs.

CAROL A. CARCHIA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI). On appeal, the defendant claims that the admission of certain evidence violated her constitutional privilege against self-incrimination and that the prosecutor's closing argument created a substantial risk of a miscarriage of justice. We affirm.

Discussion. The defendant claims that evidence of her nonresponsive answers to the arresting officer's questions amounted to impermissible evidence of her refusal to submit to field sobriety tests. As a result, the admission of this "sanitized" refusal evidence violated her privilege against self-incrimination under art. 12 of the Massachusetts Declaration of Rights. We disagree.

The privilege against self-incrimination of art. 12 prohibits the admission of evidence that a defendant refused to submit to a field sobriety test.  See Commonwealth v. McGrail, 419 Mass. 774, 780 (1995).  "[A]llowing such refusal evidence to be admissible at trial would compel defendants to choose between two equally unattractive alternatives:  'take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial.'"  Id., quoting Opinion of the Justices, 412 Mass. 1201, 1211 (1992).

Here, however, the judge excluded any reference to field sobriety tests, as well as the fact that the officers repeatedly asked the defendant if she was going to comply with the testing without receiving a responsive answer.[1]  Thus, the jury had no way of knowing that the defendant's attempts to redirect the conversation and lack of responsive answers amounted to a refusal of such testing.  Refusal evidence was simply not before the jury.

Rather, the jury only heard that an officer asked "further questions" of the defendant; that "[s]he either would start to talk to [the other officer] or talk about something different, a

---

[1] The judge even went so far as to prohibit the prosecutor from eliciting testimony from the officer that the training he received on OUI cases specifically included training on field sobriety tests.

different topic"; and that this went on for the "[n]umerous amount of times that [he] asked." This does not amount to "testimonial evidence which reveals a person's knowledge or thoughts concerning some fact," Opinion of the Justices, 412 Mass. at 1208, particularly in light of the other evidence indicating that in response to other questions posed by the officers, the defendant was "talking in and out"; "had slurred speech"; and "was difficult to understand at times," such that the officers had trouble holding a conversation with her. The evidence actually before the jury concerned the officers' observations of signs of impairment that were made during their interactions with the defendant at the scene. See Commonwealth v. Hampe, 419 Mass. 514, 523 (1995). This was proper.

The defendant also claims that the prosecutor made improper remarks in his closing argument, which include that: (1) the defendant "was really close to doing the right thing, real close"; (2) "[r]eal close didn't quite get all the way there"; (3) "when the officers were asking her questions and couldn't get a straight answer, does that have anything to do with stomach issues or anything to do [with what] you're going to read in these [medical records]"; and (4) "[s]he knew she shouldn't have been driving." Because the defendant did not object to the claims she now raises on appeal, we review to

3

determine whether there was error, and if so, whether it created a substantial risk of a miscarriage of justice.

To determine whether the prosecutor's closing argument created a substantial risk of a miscarriage of justice, and keeping in mind that "[e]rrors of this magnitude are extraordinary events and relief is seldom granted," Commonwealth v. Randolph, 438 Mass. 290, 297 (2002), we ask four questions: "(1) Was there error?  (2) Was the defendant prejudiced by the error?  (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict?  (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?"  Id. at 298 (citations omitted).  "Only if the answer to all four questions is 'yes,' may we grant relief."  Id.  See Commonwealth v. Russell, 439 Mass. 340, 345 (2003); Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 693 (2015).

The defendant claims that the prosecutor's statements urged the jury to draw impermissible consciousness of guilt inferences from the sanitized evidence and were unsupported by the trial evidence.  We disagree.  The first two challenged remarks, i.e., almost "doing the right thing," related to the defendant pulling her car over to the side of the road, but not fully succeeding because she fell asleep and did not turn the car off.  The

4

fourth challenged remark, i.e., arguing that the defendant "knew" she should not be driving was implied by her choice to pull over and stop driving. The third challenged remark, also based on the evidence, was the prosecutor's request for the jury to employ their common sense to determine whether the defendant's slurred speech and inability to answer questions was because of her medical issues or because she was impaired by the alcohol she had consumed.

Even if, as the Commonwealth acknowledges, these statements would have been better left unsaid, the defendant is not entitled to relief. "The prosecutor's language, [even if] ill-chosen, was not so rousing or inflammatory as to sweep the jury beyond rational examination of the evidence." Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011). In the context of the entire argument, the statements "amount to little more than enthusiastic rhetoric, strong advocacy, and excusable hyperbole." Commonwealth v. Costa, 414 Mass. 618, 629 (1993). Additionally, a jury instruction providing that closing argument is not evidence, as was provided by the judge here, "may mitigate any prejudice in the final argument." Commonwealth v. Kozec, 399 Mass. 514, 517 (1987). Jurors are presumed to follow such instructions. See Commonwealth v. Pope, 406 Mass. 581, 588 (1990).

Moreover, considering the challenged remarks within the context of the entire trial, they merely highlighted the compelling evidence of the defendant's impairment, including that the officers found her slouched over with her eyes closed in her vehicle, with its engine still running; the defendant admitted to the officers that she had two drinks, she has stomach issues, and when she drinks, it can severely impair her; and the defendant was "talking in and out," had slurred speech, and was difficult to understand at times. To the extent these statements refer to the sanitized evidence, the jury would more likely have inferred that the officers could not get a straight answer from the defendant because she was so impaired, rather than because she was conscious of her own guilt. Even if the prosecutor's argument contained improper remarks, or that there was no strategic choice for counsel to forego an objection to them, the defendant has failed to prove that they materially influenced the verdict. See Commonwealth v. Dresser, 71 Mass. App. Ct. 454, 458 n.10 (2008) (defendant's burden to establish existence of substantial risk of miscarriage of justice).

Because we do not answer all four of the Randolph inquiries in the affirmative, the defendant has failed to establish that the prosecutor's closing argument created a substantial risk

6

that justice miscarried.  See Randolph, 438 Mass. at 298; Coutu, 88 Mass. App. Ct. at 693.

Judgment affirmed.

By the Court (Meade, Massing & Sacks, JJ.[2]),

Assistant Clerk

Entered:  January 30, 2024.

---

[2] The panelists are listed in order of seniority.